UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| DAVID MACHOKA and <br> AGNES MACHOKA, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF COLLEGEDALE and <br> KATHERINE COOPER, <br><br> Defendants. | No.: 1:17-cv-203-TAV-CHS |

## MEMORANDUM OPINION

This civil action is before the Court on defendants' respective motions for summary judgment [Docs. 31, 33]. Defendant Katherine Cooper moves for summary judgment on plaintiffs' malicious prosecution claim ("Count I"), and for dismissal or, alternatively, summary judgment on plaintiffs' Fourteenth Amendment claim ("Count II") [Docs. 31]. Defendant City of Collegedale moves for summary judgment on plaintiffs' municipal liability claim ("Count III") [Docs. 33]. Plaintiffs responded in opposition to both motions [Docs. 39, 40], and defendants replied [Docs. 45, 46]. For the reasons discussed below, the Court will grant both motions.

I.  **Background**

Plaintiffs David and Agnes Machoka filed this action under 42 U.S.C. § 1983, alleging that defendants violated their constitutional rights while investigating and prosecuting plaintiffs for elder abuse and neglect at Moraa's Home for Seniors ("Moraa's")

in Collegedale, Tennessee.[1] Defendant Katherine Cooper is a detective with the Collegedale Police Department, an entity maintained and operated by defendant City of Collegedale (the "City").

Plaintiffs opened Moraa's in 2010 as a licensed "Residential Home for the Aged." Between January and February of 2013, family members of two residents at Moraa's reported claims of alleged physical abuse and gross neglect by plaintiffs and plaintiffs' friend, Ms. Margaret Adhiambo, to the Collegedale Police Department. Although Ms. Adhiambo did not work at Moraa's in a paid capacity, she assisted plaintiffs with work at Moraa's between January and March, 2013 [Doc. 33-3 pp. 13–14]. At that time, Moraa's had six elderly residents with a variety of ailments, including Alzheimer's and dementia [*Id.* pp. 5, 17].

After receiving the report of one family's allegations on February 18, 2013, defendant Cooper initiated an investigation. First, defendant Cooper contacted the family by phone to discuss the allegations [Doc. 31-2, p. 3]. According to Cooper, the family member was very upset in explaining the allegations of abuse upon her grandmother, G.M.,[2] who had since been removed from Moraa's by ambulance to the hospital [*Id.* p. 3]. The family member informed Cooper that she had seen Ms. Adhiambo forcibly grab her

---

[1] Unless otherwise noted, the information in this section is drawn from plaintiffs' responses to defendants' statements of material facts [Docs. 39, 40]. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (noting that all facts and the inferences to be drawn from them must be viewed in the light most favorable to the nonmoving party).

[2] The names of Moraa's residents and their family members are kept confidential, as required by Tenn. Code Ann. § 71-6-118.

grandmother by the ankles and had instructed Ms. Adhiambo not to grab her that way [*Id.* pp. 3–4; Doc. 40-7 p. 2].[3] The family member also stated that the family was concerned about G.M.'s hygiene and that she was not receiving pain medication [Doc. 31–2 p. 4; Doc. 40-7 p. 1]. During this conversation, Cooper was able to confirm with the nurse at the hospital that G.M. had bruising on her ankles, was diagnosed with a serious infection, and had not been taking pain medication [Doc. 31-2 pp. 3–4; Doc. 40-7 p. 1].

Following this conversation, Cooper consulted with an investigator with Adult Protective Services ("APS"), who informed her that APS had already been aware of separate allegations involving residents at Moraa's [Doc. 31-2 p. 6; Doc. 40-7 pp. 2–3]. Together with APS investigators, Cooper then visited Moraa's on February 20, 2013. Ms. Adhiambo was the only care provider present when they arrived [Doc. 31-2 p. 8; Doc. 40-7 p. 3]. Cooper and the APS investigators observed a number of troubling things during their visit, including a resident suffering from Parkinson's disease who asked investigators for help to sit up because she was in pain, and another resident who was found attempting to eat a stuffed animal [Doc. 40-7 pp. 2–3]. In particular, investigators were concerned that some residents appeared to have difficulty moving, and that medications were not being properly organized, labeled, and maintained [Doc. 31-2 p. 9; 40-7 p. 3]. Based on these concerns

---

[3] The Court refers to statements by others throughout this opinion that could be considered hearsay if offered at trial for the truth of the matter asserted. However, the Court uses these statements primarily for their effect on defendant Cooper rather than for their truth. As such, these statements are non-hearsay for purposes of their admissibility at trial. *See* Fed. R. Evid. 801(c); *Wiley v. United States*, 20 F.3d 222, 226 (6th Cir. 1994) ("[H]earsay evidence cannot be considered on a motion for summary judgment.").

and others, APS investigators advised Cooper that more investigation would be needed, but that they did not believe residents were in immediate danger [Doc. 40-7 p. 3].

The next day, Defendant Cooper met directly with G.M. Although G.M. suffered from dementia and spoke broken English, she was able to recount her experience at Moraa's to Cooper [Doc. 40-7 p. 5]. She was visibly upset and told Cooper that Ms. Adhiambo had grabbed her and caused her bruises [*Id.*]. She also stated that she had witnessed another elderly female resident being thrown from a chair and forcibly held to a bed, and that she had heard Ms. Adhiambo and defendant Agnes Machoka yell at residents [*Id.*].

On February 22, 2013, Cooper again met with investigators from APS, as well as a nurse with the Tennessee Department of Health, to review the case and all related documents, including medical records. During that meeting, APS advised Cooper about a complaint against Moraa's regarding another former resident, E.B. [*Id.* p. 6]. The investigator relayed to Cooper allegations by E.B.'s daughter that critical blood-clotting medication was missing from E.B.'s system, according to lab tests performed by her doctor [*Id.*]. Cooper later confirmed this information with E.B.'s daughter, and advised that she file a report with the Collegedale Police Department [*Id.*].

Cooper then spoke with the fire marshal, who also expressed concern based on a prior inspection of Moraa's [*Id.* pp. 7–8]. Cooper agreed to assist the marshal in conducting a fire drill at Moraa's on February 27, 2013. According to the fire marshal's report, all residents were evacuated to the designated staging area in under four minutes; however, this "required wheelchairs for each resident and the assistance of [Moraa's] staff" [Doc. 40-10].

Specifically, the fire marshal observed that "[r]esidents could not evacuate without the help of the staff," and cited International Fire Code section 408.10 as requiring that residents in the home be able to exit the building with minimal assistance [*Id.*]. The fire marshal was also concerned that Moraa's did not have a written fire evacuation plan [*Id.*]. These and other issues led the marshal to opine that the conditions at Moraa's presented "a life safety hazard" [*Id.*].

Based on this investigation, and after consultation with the District Attorney's Office, Cooper prepared an Affidavit of Complaint against plaintiffs David and Agnes Machoka [Doc. 40-9]. Based on this affidavit and a subsequent finding of probable cause, plaintiffs were arrested on charges of abuse and neglect and released on bond on March 5, 2013 [Docs. 40-13; 31-10]. All residents were removed from Moraa's, and the fire marshal closed the facility after plaintiffs failed to remedy fire code violations [Doc. 31-7 pp. 14–15]. Plaintiffs were indicted by the grand jury on two charges of willful abuse, neglect or exploitation on August 8, 2013 [Doc. 7 p. 6]. However, the charges were later dismissed on July 20, 2016 [*Id.* p. 7].

Plaintiffs now allege that defendant Cooper violated their Fourth and Fourteenth Amendment rights by making false statements in the Affidavit of Complaint [Doc. 7 ¶¶ 18–30]. Plaintiffs further allege that defendant City is liable for defendant Cooper's acts by virtue of its policy or custom that allowed for such acts and for its failure to adequately train, supervise, and screen its employees [*Id.* ¶¶ 31–39].

5

## II. Standard of Review

### B. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(6)

Federal Rule of Civil Procedure 8(a) sets out a liberal pleading standard. To survive a motion to dismiss, a complaint needs only a "short and plain statement of the claim showing that the pleader is entitled to relief, 'in order to give [the opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds'" of his relief "requires more than labels and conclusions." *Id.* "[A] formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In deciding a Rule 12(b)(6) motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### B. Motion for Summary Judgment Under Fed. R. Civ. P. 56

Summary judgment under Rule 56 of the Federal Rules of Civil Procedure is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant

is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of establishing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986); *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). Accordingly, all facts and the inferences to be drawn from them must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis ex rel. Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). Likewise, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (internal quotation marks omitted). That is, the nonmoving party must point to evidence in the record upon which a reasonable finder of fact could find in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The genuine issue of fact must be material, in that it might affect the outcome of the suit under governing law. *Id.*

The Court's function at the summary judgment stage is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Anderson*, 477 U.S. at 250. Thus, the Court does not weigh the evidence

or determine the truth of the matter. *Id.* at 249. The Court also does not search the record "to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479–80. In short, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a trier of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### III. Defendant Cooper's Motion for Summary Judgment

Defendant Cooper moves for summary judgment on plaintiffs' malicious prosecution claim ("Count I"), arguing that plaintiffs cannot show that their arrest and prosecution were without probable cause, or that Cooper knowingly or with reckless disregard for the truth made material false statements in her Affidavit of Complaint. As for plaintiffs' Fourteenth Amendment deprivation-of-liberty claim ("Count II"), Cooper moves for dismissal for failure to state a claim, arguing that the Fourth Amendment rather than the Fourteenth controls plaintiffs' allegations, and as such that Count II is indistinguishable from Count I. Alternatively, Cooper moves for summary judgment on Count II on the basis that plaintiffs cannot show a violation of their procedural or substantive due process rights. Finally, Cooper moves for summary judgment on both counts on qualified immunity grounds. The Court will address defendant Cooper's arguments as to each count in turn.

#### A. Count I

In order to prevail on a civil rights claim brought under 42 U.S.C. § 1983, plaintiffs are required to prove that (1) they were "deprived of a right secured by the Constitution or

laws of the United States," and (2) that they were "subjected or caused to be subjected to this deprivation by a person acting under color of state law." *Gregory v. Shelby Cty.*, 220 F.3d 433, 441 (6th Cir. 2000). Here, plaintiffs' § 1983 claim in Count I is based on a theory of malicious prosecution under the Fourth Amendment. In such a case, Sixth Circuit precedent requires that plaintiffs also prove the following: (1) the defendant "made, influenced, or participated in the decision to prosecute" plaintiffs; (2) the criminal prosecution lacked probable cause; (3) plaintiffs suffered a deprivation of liberty as a result of the legal proceeding; and, (4) the criminal prosecution was resolved in plaintiffs' favor. *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010).

Plaintiffs' success on Count I hinges on the first two, interrelated elements. "Probable cause is defined as reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *Id.* at 306. In making a probable cause determination, courts must "consider the totality of the circumstances and whether the facts and circumstances of which [the defendant] had knowledge at the moment of the arrest were sufficient to warrant a prudent person in believing that [the defendant] had committed an offense." *Id.* (internal quotation marks omitted). However, the question of probable cause relates to the first element of a malicious prosecution claim in that "police officers cannot, in good faith, rely on a judicial determination of probable cause to absolve them of liability when that determination was premised on an officer's own material misrepresentations to the court." *Id.* at 312. Thus, to establish that the defendant "made, influenced, or participated in the decision to prosecute," a plaintiff must present evidence

9

that the defendant "(1) stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the court's finding of probable cause." *Id.*

Here, even viewing the facts in the light most favorable to plaintiffs, there was probable cause to arrest plaintiffs on charges of physical abuse or gross neglect as defined in Tenn. Code Ann. §71-6-102.[4] There was, of course, a judicial determination of probable cause in this case based on defendant Cooper's Affidavit of Complaint [Doc. 31-9]. Cooper also testified before the Hamilton County Grand Jury, which indicted plaintiffs on charges of willful abuse or gross neglect [Doc. 7 ¶ 22]. Plaintiffs argue that these probable cause determinations were tainted by a number of alleged material false statements that Cooper made in her Affidavit and grand jury testimony.

Plaintiffs take issue with three statements in particular. First, plaintiffs allege that defendant Cooper "falsely swore to the absence of critical medication in G.M. and E.B.'s [medical] records" [Doc. 40 p. 11]. Second, plaintiffs argue that Cooper knowingly made a false statement in stating that "medical records indicated bruising on [G.M.'s] ankles and below her knee which was indicative of finger type markings due to being grabbed" [*see* Docs. 40 pp. 11–12; 40-9 p. 1]. Finally, plaintiffs allege that defendant Cooper submitted

---

[4] Plaintiffs were prosecuted under Tenn. Code Ann. § 71-6-119, which provides "(a) It is an offense to knowingly, other than by accidental means, physically abuse an impaired adult if the abuse results in serious mental or physical harm." Tenn. Code Ann. § 71-6-102 defines "abuse or neglect" to mean "the infliction of physical pain, injury, or mental anguish, or the deprivation of services by a caretaker that are necessary to maintain the health and welfare of an adult or a situation in which an adult is unable to provide or obtain the services that are necessary to maintain that person's health or welfare."

false sworn statements when she stated that none of Moraa's residents were ambulatory and referred to a fire code that allegedly required that residents be able to exit the building with minimal assistance [Docs. 40 p. 12; 40-9 pp. 2, 3]. However, even without the statements to which plaintiffs object, the totality of the facts and circumstances of which defendant Cooper was aware at the time of plaintiffs' arrest were sufficient to warrant a belief that plaintiffs had committed the offense charged. *See Sykes*, 625 F.3d at 306. Thus, even if the statements were knowingly false—a matter the Court does not reach—the statements were not material to the probable cause determination.

For example, plaintiffs do not dispute the truth of the following statements in the Affidavit of Complaint: the granddaughter of one of the residents at Moraa's stated that she witnessed Ms. Adhiambo grab her grandmother by the ankles and shake her [Doc. 40-9 p. 1]. That same resident was taken to the hospital and found to be dehydrated, bruised, and suffering from a serious urinary tract infection [*Id.*]. When interviewed, that resident stated that she had been injured by Ms. Adhiambo, had witnessed another resident being thrown from a chair and forcibly held to a bed, and heard defendant Agnes Machoka verbally abuse residents [*Id.*]. She stated she was fearful of the caregivers at Moraa's [*Id.*]. And finally, detectives and investigators for APS and the Department of Health witnessed concerning things upon a visit to Moraa's, including a resident asking for help to sit up because she was in pain and another resident attempting to eat a stuffed animal [*Id.* p. 2]. Investigators also corroborated the statement about a resident being thrown from a chair and held down, and were generally left with the impression that Moraa's did not have the

licensing, staff, or equipment required to care for the residents present [*Id.*]. This was the information that defendant Cooper brought to the assistant district attorney—before she had written the Affidavit of Complaint—who informed her that she had probable cause for a case against plaintiffs approximately four days after Cooper began her investigation [Doc. 40-7 p. 4].

"[T]he point of Civil Rule 56 is to prevent claims from going to jury when the court, after drawing all inferences in favor of the non movant . . . determines that no reasonable jury could [find that no probable cause existed for the defendant's arrest]." *Newman v. Township of Hamburg*, 773 F.3d 769, 773 (6th Cir. 2014). Here, the material facts supporting a probable cause determination—excluding those objected to by plaintiffs—are not in dispute. Therefore, there is no genuine dispute of material fact that would support the need for a trial on plaintiffs' malicious prosecution claim. Because probable cause existed for plaintiffs' prosecution, summary judgment will be granted for defendant Cooper on Count I.

**B.     Count II**

Count II of the Amended Complaint states another claim under 42 U.S.C. § 1983, this time for "deprivation of liberty under color of state law" [Doc. 7 pp. 7–8]. Specifically, plaintiffs allege that defendant Cooper's purported inclusion of false and misleading information in her Affidavit of Complaint deprived plaintiffs of their right to "occupational liberty"—that is, their right to work for a living [*Id.*]. Plaintiffs assert that they are guaranteed this right under the Fourteenth Amendment [*Id.*; Doc. 40 p. 16].

To the extent this claim alleges a violation of substantive due process, it is foreclosed by *Albright v. Oliver*, 510 U.S. 266 (1994). In that case, where the plaintiff alleged his prosecution without probable cause deprived him of substantive due process under the Fourteenth Amendment, the Court held that the plaintiff's claims should instead be analyzed under the Fourth Amendment. 510 U.S. at 273–75. Furthermore, several circuits agree that claims alleging the deprivation of occupational liberty are not cognizable under substantive due process. *See, e.g., Singleton v. Cecil*, 176 F.3d 419, 428 (8th Cir. 1999) (citing cases from the Seventh and Eleventh Circuits, as well as from various district courts).

Nor was there a violation of procedural due process because those protections—if implicated here at all—are coextensive with the Fourth Amendment.[5] In *Gerstein v. Pugh*, the Supreme Court explained that "[t]he Fourth Amendment [probable cause requirement] was tailored explicitly for the criminal justice system, and its balance between individual public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases . . . ." 420 U.S. 103, 125 n.27 (1975). Thus, where probable cause exists for a criminal prosecution under Fourth Amendment standards,

---

[5] Plaintiffs do not cite any case law to support their ability to allege a procedural due process claim in this context. Various circuits have indeed held that there is a cause of action for deprivation of "occupational liberty" under procedural due process. *See Singleton*, 176 F.3d at 428. However, cases addressing this issue largely involve at-will government employees suing their employer or employees who otherwise have some statutory right to continued employment. *See, e.g., Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532 (1985); *Bishop v. Wood*, 426 U.S. 341 (1976). Plaintiffs provide no support for their assumption that they hold a protected right that would provide a basis for a procedural due process claim such as the one they apparently allege.

procedural due process has also been satisfied under the Fourteenth Amendment. *See Gehl Group v. Koby*, 63 F.3d 1528, 1538 (10th Cir. 1995).

The Sixth Circuit used that same reasoning in *Radvansky v. City of Olmsted Falls*, where the plaintiff brought a § 1983 claim consisting of claims under the Fourth Amendment, Equal Protection Clause, and Due Process Clause. 395 F.3d at 313. There, the court held that although the officers involved did not have probable cause to arrest the plaintiff under the Fourth Amendment, the plaintiff's reliance on the Due Process Clause was "misplaced . . . because it is the Fourth Amendment which establishes procedural protections in this part of the criminal justice area." *Id.* "[B]ecause the Due Process Clause of the Fourteenth Amendment does not require any additional procedures beyond those mandated by the Fourth Amendment," the court affirmed the district court's grant of summary judgment on the plaintiff's due process claim. *Id.* Similarly, because there was probable cause for plaintiffs' prosecution here, as explained above, summary judgment will be granted for defendant Cooper on Count II.

### C. Qualified Immunity

Based on the foregoing analysis, defendant Cooper is also entitled to qualified immunity. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Cockrell v. City of Cincinnati*, 468 Fed. App'x 491, 493 (6th Cir. 2012) (citing *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011)). Since defendant Cooper

14

has pled the defense of qualified immunity [Doc. 14 p. 9], the burden shifts to plaintiffs to "show that [Cooper] violated a right so clearly established 'that every reasonable official would have understood that what [s]he [was] doing violated that right.'" *Id.*

As set forth above, plaintiffs cannot meet this burden. Both a judge and grand jury determined that probable cause existed to believe plaintiffs had committed physical abuse or gross neglect [Docs. 31-9; 7, ¶ 22]. Based on the undisputed facts in the record, plaintiffs could not negate this probable cause determination. Accordingly, defendant Cooper did not violate any clearly established constitutional or statutory right, and she is entitled to qualified immunity as a result.

**IV.     Defendant City of Collegedale's Motion for Summary Judgment**

A municipality may be sued under § 1983 where an officer's unconstitutional actions are caused by the municipality's official policy or custom. *Monell v. Dept. of Soc. Servs., of City of New York*, 436 U.S. 658, 690 (1978). However, "[t]here can be no *Monell* municipal liability under § 1983 unless there is an underlying unconstitutional act." *Wilson v. Morgan*, 277 F.3d 326, 340 (6th Cir. 2007) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)). Because the Court will grant summary judgment for defendant Cooper, there is no unconstitutional act that would support imposing *Monell* liability on the City. Therefore, the Court will also grant summary judgment for the City on Count III of the Amended Complaint.

15

## V. Conclusion

For the reasons explained above, defendants' motions for summary judgment [Docs. 31, 33] will be **GRANTED**. A separate order will follow. The Clerk will be **DIRECTED** to **CLOSE** this case.

ORDER ACCORDINGLY.

                                              s/ Thomas A. Varlan
                                              UNITED STATES DISTRICT JUDGE